IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ALVAH JOHNSON, MICHAEL PIERCE, and THEODORE BRAMBLE, §<br>§<br>§<br>    Plaintiffs, §<br>§<br>v. §<br>§<br>DALLAS COUNTY HOSPITAL DISTRICT §<br>d/b/a PARKLAND HEALTH & HOSPITAL §<br>SYSTEM, and MICHAEL WOOD, in his §<br>individual capacity, §<br><br>    Defendants. | Civil Action No. 3:23-CV-01574-E |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Dallas County Hospital District d/b/a Parkland Health & Hospital System's ("Parkland") and Michael Wood's ("Wood") (collectively referred as "Defendants") Motion for Partial Dismissal for failure to state a claim. (ECF No. 11). Plaintiffs Alvah Johnson ("Johnson"), Michael Pierce ("Pierce"), and Theodore Bramble ("Bramble") (collectively "Plaintiffs") allege various claims of intentional race discrimination against Parkland and Wood. Having considered the motion, briefing, and applicable law, the Court **GRANTS** Parkland's motion to dismiss.

## I.   BACKGROUND

The following facts are taken from the First Amended Complaint. (ECF No. 7). This lawsuit arises from purportedly racially discriminatory employment actions concerning three Black individuals employed by Parkland. Defendant Parkland is a statutorily-created hospital district located in Dallas, Texas. *See* Tex. Health & Safety Code Ann. § 281.002. At the time of

this lawsuit and its underlying events, Defendant Wood was an employee of Parkland, and in a management position over Plaintiffs. (ECF No. 7 at 3). All three Plaintiffs allege various charges of race-based discrimination during their employ by Parkland. Further, all Plaintiffs assert that "Defendant's custom or policy of discriminating against Black employees with regard to promotional opportunities was the moving force" behind each of their alleged constructive discharges. (ECF No. 7 at 5, 8, 11).

## A.      Johnson's Employment

From March 2013 until November 26, 2021, Johnson worked at Parkland as a Stationary Engineer Supervisor. (ECF No. 7 at 3). In May 2021, Johnson applied for the Central Utility Plant ("CUP") Manager, which Johnson asserts was a position that he was qualified for—having previously served as interim CUP Manager on four different occasions. (ECF No. 7 at 3). Johnson states that he was promised an interview with Senior Director of Facilities Support Services Wood and CUP Director Angelica Flores because he was an internal candidate. (ECF No. 7 at 4). After interviewing with Wood, Johnson was told he would have to complete a supplemental interview prior to being considered for the position. (ECF No. 7 at 4). However, Johnson's supplemental interview never occurred as he was informed that Defendants had already decided to hire a non-Black individual—a hiring decision Plaintiffs allege Wood played a key role in. (ECF No. 7 at 4).[1]

On July 22, 2021, Johnson wrote a letter to the Parkland Board of Managers—the governing body which makes policy for Parkland—and to Human Resources, to express "his concerns regarding a custom or policy of racial disparity in promotion selections within the

---

[1] Plaintiffs do not plead a date upon which Johnson was not selected for Central Utility Plant Manager position. (*See generally* ECF No. 7).

company." (ECF No. 7 at 4). As alleged, Johnson never received a response from any Parkland officials regarding his race-based concerns. (ECF No. 7 at 4).

On November 26, 2021, Johnson alleges that his working conditions "were so intolerable as to compel him to resign based on Defendants failure to promote him to management level positions based on his race, Black; his observation that other Black employees were also subjected to a custom or policy of race-based promotion practices; and since Parkland never took any measures to remedy the deprivation of his rights, specifically, its unlawful promotion practices based on race." (ECF No. 7 at 5).

**B.     Pierce's Employment**

Pierce worked as a Director of Environmental Safety and Hospital Safety Officer at Parkland for forty-five years, ending in July 2021. (ECF No. 7 at 5). Pierce asserts he "experienced discrimination based on race in 2015 when he was initially passed over for the Director role" and the position was given to a White employee with less experience. (ECF No. 7 at 5). Eventually, Parkland promoted Pierce to the Director role. (ECF No. 7 at 6).[2]

During his employment, Pierce voiced his concerns about the "custom or policy of racial discrimination in promotions" to both Human Resources and the Parkland Board of Managers. (ECF No. 7 at 5). Pierce had telephone conferences with Parkland's Chief Operating Officer ("COO") and Chief Executive Officer ("CEO") regarding the alleged discrimination policies and practices in Parkland's promotions decisions. (ECF No. 7 at 6). These conferences included reports that Black employees had to wait longer to be selected for promotions, while unqualified White candidates were selected instead. (ECF No. 7 at 7). Subsequently, Parkland's CEO set up a panel to address such policies and procedures. (ECF No. 7 at 6). During the panel, one Black employee—

---

[2] Pierce does not allege the dates upon which he was passed over for promotion nor promoted to the Director role.

Vivian Johnson—stated that it took her to ten to fifteen years to receive her Senior Vice President position, as opposed to a White employee who was promoted in less than two years from Director to Senior Vice President. (ECF No. 7 at 6).

Pierce also reported to human resources that Wood was calling him and Bramble "boy" and requested that they make him stop. (ECF No. 7 at 7). Pierce eventually felt his working conditions were so intolerable as to compel him to resign, with a final date of employment of July 31, 2021. (ECF No. 7 at 8).

## C.     Bramble's Employment

From 2016 to May 2023, Bramble worked at Parkland as a Senior Environmental Safety Coordinator. (ECF No. 7 at 8). Bramble applied for the Director of Environmental Safety position around July 28, 2021. (ECF No. 7 at 8). Bramble asserts Human Resources told him that he was qualified for the position because he held a Certified Healthcare Safety Professional ("CHSP"), and he had previously served as the interim Director. (ECF No. 7 at 8). Bramble alleges that his supervisor—Wood—informed him that the position required eight- or nine-years' experience, but this requirement was not posted on any job listing. (ECF No. 7 at 9). Bramble alleges that he met this purported job requirement, as he had previously worked in healthcare safety and as a hazmat tech and hazmat foreman. (ECF No. 7 at 8–9).

As alleged, Wood chose the panelists for interviews for the Director of Environmental Safety position and had the authority to veto the panelists' decisions. (ECF No. 7 at 9). Only one of the panelists chosen to conduct Bramble's interview was in a Director role. (ECF No. 7 at 9). Two members of the panel were co-workers on the same level as Bramble and were allegedly in competition with Bramble for this position. (ECF No. 7 at 9). Parkland selected a non-Black

induvial with allegedly less qualifications and tenure than Bramble for this Director position. (ECF No. 7 at 10).[3]

Bramble also alleges that two positions were created in two departments within the facility in which he worked, the Sustainability Department and the Emergency Management Department, and as he was never made aware of these positions, he was denied the opportunity to apply for them. (ECF No. 7 at 10). Bramble asserts both positions were filled by white individuals with less tenure than Bramble. (ECF No. 7 at 10). Bramble asserts that he was misled by Wood, who had stated that new positions could not be created. (ECF No. 7 at 10).

In or around September 2021, Bramble asserts he reported disparate treatment based on his race to Parkland's Human Resources department, alleging that Black employees in his department were not given management positions. (ECF No. 7 at 10). Shortly thereafter, Bramble had two phone calls with John Proctor, who sits on Parkland's Board of Managers, to discuss "Parkland's race-based customs and policies with regard to promotions." (ECF No. 7 at 10–11). Bramble pleads his concerns were never addressed, nor were any remedial measures taken. (ECF No. 7 at 11).

Bramble asserts he received an unwarranted written warning on January 20, 2022. (ECF No. 7 at 11). That same day, Bramble asserts he contacted Human Resources to express that he was experiencing retaliation for lodging his discrimination complaint. (ECF No. 7 at 11). Bramble was subsequently required to attend weekly meetings regarding his performance, and his work was subject to close supervision. (ECF No. 7 at 11).

In May 2023, Bramble asserts that—after "having experienced being called 'boy,' having received an unwarranted and retaliatory disciplinary warning and monitoring of his work, having

---

[3] Bramble does not provide a date upon which he was not selected for Director of Environmental Safety position.

been denied promotions and promotional opportunities based on his race, and due to being subjected to and observing Defendant Parkland's discriminatory customs or policies with regard to the promotion of Black employees,"—he felt compelled to resign from employment. (ECF No. 7 at 11).

### D.    Procedural History

Plaintiffs initiated this lawsuit on July 13, 2023. (ECF No. 1). Plaintiffs filed their Amended Complaint—the operative complaint on which they proceed—on November 20, 2023. (ECF No. 7). In their complaint, they allege twenty-two causes of action under 28 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, and Texas Employment Discrimination Act.:

> (i) employment discrimination – promotions & constructive discharge against Parkland;
> (ii) employment discrimination – promotion as to Johnson against Wood;
> (iii) race discrimination – promotion as to Bramble against Wood;
> (iv) employment discrimination – retaliation as to Bramble against Wood;
> (v) employment discrimination – constructive discharge as to Pierce against Wood;
> (vi) employment discrimination – constructive discharge as to Bramble against Wood;
> (vii) employment discrimination – constructive discharge as to Johnson against Wood;
> (viii) employment discrimination – failure to adopt policies against Parkland;
> (ix) employment discrimination – failure to discipline against Parkland;
> (x) employment discrimination on the basis of race against Parkland;
> (xi) employment discrimination – promotion as to Johnson against Parkland;
> (xii) employment discrimination – promotion as to Bramble against Parkland;
> (xiii) employment discrimination – retaliation against Parkland;
> (xiv) employment discrimination – constructive discharge as to Bramble against Parkland;
> (xv) employment discrimination – constructive discharge as to Pierce against Parkland;
> (xvi) employment discrimination – constructive discharge as to Johnson against Parkland;
> (xvii) employment discrimination on the basis of race as to Johnson against Parkland;
> (xviii) employment discrimination on the basis of race as to Bramble against Parkland;
> (xix) employment discrimination – retaliation against Parkland;
> (xx) employment discrimination – constructive discharge as to Pierce against Parkland;
> (xxi) employment discrimination – constructive discharge as to Johnson against Parkland; and
> (xxii) employment discrimination – constructive discharge as to Bramble against Parkland.

Defendants filed their original Motion to Dismiss on October 30, 2023. (ECF No. 4). In response, Plaintiffs filed their Amended Complaint. (ECF No. 7). Defendants filed the instant

Partial Motion to Dismiss on January 2, 2024, seeking dismissal of sixteen causes of action: counts i–x, xiv–xvi, and xx–xxii. (ECF No. 11). Plaintiffs responded to the Motion, (ECF No. 16), and Defendants replied, (ECF No. 22). Thus, the motion is fully briefed and ripe for consideration.

## II.   LEGAL STANDARD

### A.     12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the courts to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. But a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In considering a Rule 12(b)(6) motion to dismiss, "the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to plaintiff." *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019) (citing *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986). "The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citation omitted).

### III.   SECTION 1983 CLAIMS, GENERALLY

Plaintiffs' complaint appears to state that their § 1983 claims are brought to remedy Defendants' violations of § 1981. "The express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989). To state a claim under § 1983, a plaintiff must allege: (i) "some person has deprived him of a federal right" guaranteed by the United States Constitution or federal law; and (ii) "the person who deprived him of that right acted under color of state or territorial law." *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The existence of a constitutional violation is a "threshold" requirement in any § 1983 claim. *Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009). "[W]ithout an underlying constitutional violation, there can be no § 1983 liability." *Becerra v. Asher*, 105 F.3d 1042, 1047 (5th. Cir. 1997).

### IV.   PLAINTIFFS' CLAIMS AGAINST PARKLAND

Plaintiffs raise three municipal liability claims—also known as *Monell*[4] claims—against Parkland, arguing that Parkland's customs or policies (or lack of policies) were a "moving force behind the deprivations of Plaintiffs' rights under 42 U.S.C. §1981." (*See* ECF No. 7 at 14, 20, 22). Thus, to prevail on their claims against Parkland, Plaintiffs must show that the violation of their rights to be free from employment discrimination on the basis of race protected by § 1981 was caused by a custom or policy within the meaning of *Monell* and subsequent cases.

"Municipal liability under 42 U.S.C. § 1983 requires proof of 1) a policymaker; 2) an official policy; 3) and a violation of constitutional rights whose 'moving force' is the policy or custom." *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003) (citing *Piotrowski*

---

[4] *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).

*v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). "To sustain liability under § 1983, the [Plaintiff] must point to more than the actions of an employee, [Plaintiff] must identify a policymaker with final policymaking authority and a policy that is the 'moving force' behind the alleged constitutional violation." *Rivera*, 349 F.3d at 247. The Supreme Court has explained that a governmental entity may not be held liable under § 1983 "unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691. "Municipalities are not liable on the theory of respondeat superior and are almost never liable for an isolated unconstitutional act on the part of an employee." *Hutcheson v. Dallas Cnty., Texas*, 994 F.3d 477, 482 (5th Cir. 2021).

"The first requirement for imposing municipal liability is proof that an official policymaker with actual or constructive knowledge of the constitutional violation acted on behalf of the municipality." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 167 (5th Cir. 2010). "The policymaker must have final policymaking authority." *Rivera*, 349 F.3d at 247. The identity of the policymaker is a question of state law. *Groden v. City of Dallas*, 826 F.3d 280, 284 (5th Cir. 2016).

Once a policymaker has been established, Plaintiffs must prove the existence of an official policy. A municipal "policy" must be a deliberate and conscious choice by a municipality's policy-maker. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality)). Upon consideration whether the "allegedly unconstitutional action constitutes a custom or policy of the municipality," two forms must be considered. *Zarnow*, 614 F.3d at 168. "First, a plaintiff may point to a policy statement formally announced by an official policymaker." *Zarnow*, 614 F.3d at 168. Alternatively, "the plaintiff may demonstrate a persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to

constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 169. "The Supreme Court has explained that a custom may give rise to liability under *Monell* if the practice is so persistent and widespread as to practically have the force of law." *Moore v. LaSalle Mgmt. Co.*, 41 F.4th 493, 509 (5th Cir. 2022); *see Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."). "The description of a policy or custom and its relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997).

Last, regarding the third element that the policy alleged be the "moving force" behind the constitutional violation, a plaintiff must establish that "the municipal action was taken with the requisite degree of culpability and . . . demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). Plaintiffs assert the following *Monell* claims against Parkland: (a) count 1—failure to promote and constructive discharge; (b) count 8—failure to adopt policies; and (c) count 9—failure to discipline.

**A.    Municipal Liability Claims Against Parkland Under § 1981 through § 1983 (Counts i, viii, ix)**

*1.    Section 1983 Statute of Limitations*

The parties appear to have contested the appropriate statute of limitations applicable to the § 1981 through § 1983 claims asserted. Plaintiffs argue that that this Court should apply a four-year statute of limitations—referring to cases from the Fourth and Eleventh Circuit in which they determined "the four-year statute of limitations provided by § 1658 applies to a § 1981 claim brought through § 1983." (ECF No. 16 at 9) (citing *Chambers v. N. Carolina Dep't of Just.*, 66

F.4[th] 139 (4th Cir. 2023).[5] However, the *Chambers* court acknowledges that only the Fourth and Eleventh Circuits decided the four-year statute applies to § 1981 claim brought through § 1983. *Chambers*, 66 F.4[th] at 142. Plaintiffs refer the Court to no Fifth Circuit precedent that has decided four-year statute applies to § 1981 claim brought through § 1983, and the Court has found no such Fifth Circuit precedent. The Court declines to adopt Plaintiff's interpretation and elects to follow well-settled precedent in this circuit that "[f]ederal civil rights actions brought under section 1981, which lack an express statute of limitations, are governed by the most closely analogous limitations period provided under state law." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004), (abrogated by *Hamilton v. Dallas Cnty.*, 79 F.4[th] 494 (5th Cir. 2023) on other grounds)). "Since Texas has a two-year statute of limitations for personal injury claims . . . [a Plaintiff] ha[s] two years to file suit from the date her claim accrued." *Piotrowski*, 237 F.3d at 576 (citing *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989)); *accord Hatchet v. Nettles*, 201 F.3d 651, 653 (5th Cir. 2000); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). "The time at which a § 1983 claim accrues is a question of federal law." *McDonough v. Smith*, 588 U.S. 109, 115 (2019) (internal quotation omitted). "Under federal law, the [limitations] period begins to run the moment the plaintiff becomes aware that [s]he has suffered an injury or has sufficient information to know that [s]he has been injured." *Piotrowski*, 237 F.3d at 576 (internal quotation omitted).

Here, the operative date in this case is July 13, 2023—the date on which Plaintiffs filed their Original Complaint in this Court. (ECF No. 1). Plaintiff Pierce alleges that he experienced discrimination when he was passed over for a director role in 2015, nearly eight years before the

---

[5] The Eleventh Circuit also held that a four-year statute of limitations applies to § 1983 claims asserting violations of § 1981 rights. *See Baker v. Birmingham Bd. Of Educ.*, 531 F.3d 1336, 1338 (11th Cir. 2008).

operative date. (ECF No. 7 at 5). This allegation and any adverse employment actions which occurred prior to July 13, 2021, are not timely filed "within two years of the[ir] adverse employment action" and therefore, not actionable. *Byers*, 209 F.3d at 424.

   2.   *Section 1983 Failure to Promote and Constructive Discharge Claim (Count i)*

In Count 1, Plaintiffs allege that Parkland established a discriminatory practice of denying upper-level promotions based on race, thereby depriving Plaintiffs of rights and privileges secured by 42 U.S.C. § 1981. (ECF No. 7 at 12). Plaintiffs contend that Parkland's practice of denying promotional opportunities to Black employees was so "widespread" as to constitute "a custom that fairly represents municipal policy," thereby rendering Parkland liable under § 1983. (ECF No. 7 at 12). Specifically, Plaintiffs allege:

> Evidence of such a widespread practice or custom includes the following: (i) The six (6) specific incidents where a more-qualified Black employee was passed over for a promotion that was ultimately given to a non-Black employee, highlighted above; (ii) the fact that the Plaintiffs observed a pattern of such discriminatory conduct in promotions over numerous years; (iii) the three (3) specific incidents where additional requirements for promotions were imposed only on Black employees, highlighted above; (iv) the numerous incidents where Defendant Parkland's hiring managers used racial epithets; and (v) that Plaintiffs and other Black employees made at least five (5) specific reports directly to either Defendant Parkland's Board of Directors or Defendant Parkland's Human Resource Department about this custom or practice, including letters sent directly to the Board of Directors discussing a long pattern of discrimination towards promotions and a phone call from County Commissioner John Price regarding this custom or practice.

(ECF No. 7 at 13). Parkland argues that Plaintiffs have failed to sufficiently plead the existence of an official policy or custom that was the moving force behind the underlying violations. (ECF No. 11 at 8–12). Relevant to a failure to promote claim under § 1983, Plaintiffs contend that there are "six (6) specific incidents where a more qualified Black employee was passed over for a promotion that was ultimately given to a non-Black employee". (ECF No. 7 at 13; ECF No. 16 at 10-11). The specific allegations are:

      (i) Johnson applied for Central Utility Plant Manager
      (ii) Pierce applied for a director role
      (iii) Vivian Johnson took ten years to get her Senior Vice President position
      (iv) Bramble applied for Director of Environmental Safety
      (v) Bramble was unaware of a position within the Sustainability Department
      (vi) Bramble was unaware of a position within the Emergency Management Department

(ECF No. 16 at 10-11) (cleaned up).

The Court concludes that Plaintiffs' have failed to plead specific, nonconclusory facts identifying an official policy or custom within Parkland resulting in the denial of promotional opportunities to Black employees. *See Rivera*, 349 F.3d at 247. An employee presents a prima facie case of discrimination by failure to promote by demonstrating that: "(1) he was not promoted; (2) he was qualified for the position he sought; (3) he fell within a protected class at the time of the failure to promoted; and (4) the defendant either gave the promotion to someone outside of that protected class or otherwise failed to promoted the plaintiff because of his race." *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013).

In four of the alleged incidents, Plaintiffs fail to allege the prima facie elements of a discriminatory failure to promote claim. (*See* ECF No. 16 at 10–11). Taking the incidents in turn, incidents two and three—involving Pierce and Vivian Johnson—both proclaim that the parties subsequently received the promotions each sought. Pierce was "initially passed over for the Director role" but that "eventually, the Director role was given to Plaintiff Pierce." (ECF No. 7 at 5-6). Therefore, Plaintiffs' pleadings contain no sufficient factual allegation to the fourth element of their prima facie burden. Pierce's allegations of his promotion show Parkland accepted—not rejected—him for the Director role of which he sought. Therefore, these allegations do not establish a prima facie case of discrimination for failure to promote. *Autry*, 704 F.3d at 347.

Likewise, Plaintiffs' third example of Vivian Johnson's "delayed" promotion suffers from similar deficiencies. (*See* ECF No. 7 at 6; ECF No. 16 at 10–11). That Vivian Johnson was

promoted to Senior Vice President after ten to fifteen years while a similarly situated White employee received the same promotion in less than two years, even taken as true, fails to present a prima facie case of discrimination for failure to promote. *See Autry*, 704 F.3d at 347. Absent from Plaintiffs' Complaint are any allegations that Vivian Johnson applied and was qualified for a prior promotion for which she was rejected. *See Autry*, 704 F.3d at 347. (discussing the second and fourth elements for a failure to promote discrimination claim). Consequently, the vague and conclusory nature of these alleged instances are insufficient to establish a plausible policy-or-custom claim under *Monell*. *See Spiller*, 130 F.3d at 167.

Plaintiffs fail to allege the prima facie elements of a discretionary failure to promote claim in incidents five and six. (ECF No. 16 at 11). Plaintiffs allege that Bramble was "denied the opportunity to apply" to two positions: one within the Sustainability Department and the other within the Emergency Management Department. (ECF No. 16 at 11). Plaintiffs admit that Bramble did not apply to either of these positions, an admission which bars a failure to promote claim, "absent a showing that such an application would have been a futile gesture." *Irons v. Aircraft Serv. Int'l, Inc.*, 392 F. App'x 305, 312 (5th Cir. 2010); *see also Grice v. FMC Techs. Inc.*, 216 F. App'x 401, 406 (5th Cir. 2007). As the Fifth Circuit has explained, the "futile gesture" exception applies only where "the applicant for the promotion was deterred by a known and consistently enforced policy of discrimination." *Irons*, 392 F. App'x at 312 (internal citations omitted). Plaintiffs' argument that Bramble "was never made aware of these newly created positions," and was therefore "denied the opportunity to apply to them", without more, does not suggest a "known and consistently enforced policy of discrimination" in Parkland's promotion system. *See Irons*, 392 F. App'x at 312 (plaintiff failed to establish "futile gesture exception" where the employer "approached who they wanted" to fill the positions without giving plaintiff an opportunity to

apply); *Spears v. Louisiana*, 767 F.Supp. 2d 629, 640 (M.D. La. 2011) (plaintiff's failure to apply for a position because her supervisor told her it was already taken was insufficient, without more, to establish a known and consistently enforced policy of discrimination). Thus, without pleaded allegation(s) to substantiate the second element of a discrimination by failure to promote claim, Plaintiffs have not met their burden.

Nevertheless, Plaintiffs allege the prima facie elements of a discriminatory failure to promote claim in incidents one and four: (i) Johnson's application to the Central Utility Plant Manager and (ii) Bramble's application to the Director of Environmental Services. Johnson pleads that he is a Black man and had "served as interim CUP Manger on four (4) separate occasions[,]" the position for which he applied. (ECF No. 7 at 3). After his initial interview with Defendant Wood and before he had a second interview, he was notified that Mr. Alvarez was hired for the position. (ECF No. 7 at 4). Johnson alleges that that the candidate who was ultimately hired for the position "had no prior engineering experience and no certifications that were applicable to Central Utility Plan operations." (ECR No. 7 at 4). The actions, as alleged by the defendant indicate sufficient pleadings of the prima facie elements of a discriminatory failure to promote claim. *See Autry*, 704 F.3d at 346-47.

Next, Bramble's application to the Director of Environmental indicates that he is a Black man and had "served as interim Director" and "met the qualifications" for the position he applied. (ECF No. 7 at 8). Bramble plead additional qualifications, including, that he had worked in "Healthcare Safety since 2011", had his "Certified Health[care] Safety Professional (CHSP) certificate", and had been informed by Defendant Parkland's Human Resources Department that he "was qualified to fill the vacancy." (ECF No. 7 at 9). After his initial panel interview, a non-Black individual was selected for the position. (ECF No. 7 at 9-10). To bolster this assertion,

Bramble states that the selected party did not have "OSHA training", which Bramble asserts he had. (ECF No. 7 at 10). Additionally, the selected individual had a "Certified Safety Professional (CSP) Certificate, rather than the [Certified Healthcare Safety Professional] CHSP certificate." ECF No. 7 at 10). Like with Johnson's allegations in incident one, Bramble has alleged sufficient pleadings of the prima facie elements of a discriminatory failure to promote claim. *Autry*, 704 F.3d at 346-47.

However, this Court determines that Plaintiffs have failed to plead specific, nonconclusory facts identifying an official policy or custom within Parkland resulting in the denial of promotional opportunities to Black employees. *See Rivera*, 349 F.3d at 247. Here, Plaintiffs have pled in their complaint that "Defendant Parkland had a custom or policy of denying promotions and promotional opportunities to Black employees" while only pleading two incidents of such promotional denials that occurred in the same year. (ECF No. 7 at 12). Plaintiffs' pleadings do not establish a customary policy consisting of "actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow*, 614 F.3d at 169.[6]

This Court concludes that Plaintiffs failed to plead constructive discharge under Count 1 because a bare conclusion that Defendant Parkland had a "policy of constructive discharge" is not sufficient. *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000) ("To establish a constructive discharge claim, an employee must offer evidence that the employer made the employee's working

---

[6] The Fifth Circuit has repeatedly required more than two isolated incidents in a single year. *See Davidson v. City of Stafford*, 848 F.3d 397, 396 (5th Cir. 2017) (three arrests over three and a half years to form the basis of the alleged pattern of unconstitutional violations was "insufficient" to establish a pattern of constitutional violations); *Peterson*, 588 F.3d at 852 ("[T]he 27 [complaints of excessive force from 2002 to 2005], in the context of this record, do not suggest a pattern "so common and well-settled as to constitute a custom that fairly represents municipal policy."); *see generally Hernandez* v. *Dallas County et al.*, No. 3:23-CV-01583-E, 2024 WL 4202381, at *8 (N.D. Tex. Sept. 16, 2024) (collecting cases).

conditions so intolerable that a reasonable employee would feel compelled to resign."). Therefore, this Court grants Defendants' motion to dismiss as to Count i.

3.    *Section 1983 Failure to Adopt Policies Claim (Count viii)*

In Count 8, Plaintiffs allege that Parkland's official policymakers failed to adopt policies that effectively banned discrimination against Black employees in the making of decisions regarding promotion to management-level positions. (ECF No. 7 at 19). Specifically, Plaintiffs assert that Parkland's official policymakers were "deliberately indifferent to the need to ban race discrimination in promotion decisions to management positions, despite notice that such failures would lead to deprivations of rights under 42 U.S.C. § 1981." (ECF No. 7 at 20).

"Supervisory officials may be liable under § 1983 for their failure to adopt policies if that failure causally results in a constitutional injury." *Crittindon v. LeBlanc*, 37 F.4th 177, 186 (5th Cir. 2022). Liability only arises when the officials act, or fail to act, with "deliberate indifference." *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). To establish a failure-to-enact policy theory, plaintiffs must allege the official had "actual or constructive notice" that their failure to adopt policies would result in constitutional violations. *See generally Porter*, 659 F.3d 440. Actual or constructive knowledge "typically requires showing notice of 'a pattern of similar constitutional violations.'" *Crittindon*, 37 F.4th at 186 (quoting *Porter*, 659 F.3d at 447). "While the municipal policy-maker's failure to adopt a precaution can be the basis for § 1983 liability, such omission must amount to an intentional choice, not merely an unintentionally negligent oversight." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992) (quoting *City of Canton*, 489 U.S. at 387).

"[D]eliberate indifference is a stringent standard of fault, requiring [allegations] that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61. Plaintiff "must show that 'in light of the duties assigned to specific officers or employees the

need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'" *Valle v. City of Houston*, 613 F.3d 536, 547 (5th Cir. 2010) (quoting *City of Canton*, 489 U.S. at 390). In *Connick*, the Supreme Court summarized this standard as follows:

> Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. The city's "'policy of inaction'" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." A less stringent standard of fault for a failure-to-train claim would result in *de facto respondeat superior* liability on municipalities .... *see also Pembaur [v. City of Cincinnati]*, *supra*, [475 U.S.] at 483, 106 S. Ct. 1292 [89 L.Ed.2d 452 (1986)] (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials ...").

*Connick*, 563 U.S. at 61–62 (citations and quotations omitted).

Here, Plaintiffs allege that Defendant Parkland's policymakers failed to adopt policies that "effectively banned discrimination against Black employees in the making of decisions regarding promotion to management-level positions." (ECF No. 7 at 19). Plaintiffs allege that policymakers "had notice" through "direct complaints" to "management officials, Defendant Parkland Human Resource officials, Defendant Parkland's Board of Managers, and a County Court Commissioner, who brought this violation to Defendant Parkland's attention." (ECF No. 7 at 19). Specifically, Plaintiffs allege that (i) Johnson "wrote a letter to John Proctor of the Parkland Board of Managers and to Human Resources"; (ii) Pierce conducted phone meetings with Mr. Proctor, human resources, and the CEO of Parkland hospital; and (iii) Bramble spoke with Mr. Proctor on two separate occasions and reported his concerns to human resources. (ECF No. 7 at 4, 6-7, 10).

A plaintiff may show deliberate indifference in either of two ways, "First, a plaintiff may demonstrate 'that a municipality had notice of a pattern of similar violations.'" *Doe 1 v. Rockwall Indep. Sch. Dist.*, No, 3:23-CV-01243-E, 2024 WL 1837967, *13 (N.D. Tex. Apr. 26, 2024) (citing *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017). "'Second, a plaintiff may demonstrate liability based on a single incident if the constitutional violation was the highly predictable consequence of a particular failure [to promulgate a policy].'" *Doe 1*, 2024 WL 1837967 at *13 (citing *Davidson*, 848 F.3d at 397) (internal quotation marks omitted). As discussed above, Plaintiffs have only pled two instances of discriminatory failure to promote claims and instead, rely primarily on broad conclusions that Defendant Parkland was aware of "direct complaints of capable and tenured employees." (ECF No. 7 at 19). However, Plaintiffs' conclusory, unsupported statements that lack specific factual allegations fail to demonstrate a pattern of similar constitutional violations as Plaintiffs only plead two instances of their personal experiences occurring during the same calendar year and under the direction of a singular supervisor at Parkland. *Crittindon*, 37 F.4th at 186. Thus, Plaintiffs have failed to allege factual allegations that any official had actual or constructive knowledge that a failure to adopt policies would result in constitutional violations. *See generally Porter*, 659 F.3d 440. This Court concludes Plaintiffs have failed show deliberate indifference and have failed to meet their burden under *Monell*. *Crittindon*, 37 F.4th at 186. Therefore, this Court grants Defendants' motion to dismiss as to Count viii.

4.    *Section 1983 Failure to Discipline Claim (Count ix)*

In Count 9, Plaintiffs allege that Parkland's "pattern of failing to discipline deprivations of individual rights by employees can be inferred from the failure to discipline any of the six (6) specific incidents of discrimination for promotion to management." (ECF No. 7 at 22). Defendant

Parkland challenges Plaintiff's failure to discipline claim on the basis that Plaintiffs fail to plead sufficient facts to support an inference of deliberate indifference on behalf of Parkland policymakers. (ECF No. 11 at 15).

"[T]here are limited circumstances in which an allegation of a 'failure to train' [or failure to discipline] can be the basis for liability under § 1983. *City of Canton*, 486 U.S. at 387. For a failure-to-discipline claim to survive a Rule 12(b)(6) motion, a plaintiff must sufficiently plead "that (1) the [governmental entity] failed to [discipline] the officers involved; (2) there is a causal connection between the alleged failure to [discipline] and the alleged violation of the plaintiff's rights; and (3) the failure to [discipline] constituted deliberate indifference to the plaintiff's constitutional rights." *Hutcheson*, 994 F.3d at 482.[7]

"A pattern of similar constitutional violations by [undisciplined] employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train [or discipline]." *Connick*, 563 U.S. at 62 (quoting *Bd. of Cty. Comm'rs of Bryan Cnty., Okl.*, 520 U.S. at 409. However, "in certain extreme circumstances, a single act by a municipal employee [may] form the basis of municipal liability apart from a pattern of unconstitutional activity." *Roberts v. City of Shreveport*, 397 F.3d 287, 295 (5th Cir. 2005). But "[t]he 'single incident exception' is extremely narrow," *Valle*, 613 F.3d at 549, and "is generally reserved for those cases in which the government actor was provided no training whatsoever." *Peña v. City of Rio Grande City*, 879 F.3d 613, 624 (5th Cir. 2018).

---

[7] *Hutcheson* concerns a failure to train claim rather than failure to discipline, however, the elements required to prove both claims are identical. *See E.G. v. Bond*, No. 1:16-CV-068-C, 2017 WL 129019, at *3 (N.D. Tex. Jan. 13, 2017); *Snow v. City of El Paso, Tex.,* 501 F. Supp. 2d 826, 833 n.5 (W.D. Tex. 2006); *see Burge v. St. Tammany Parish,* 336 F.3d 363, 370 (5th Cir. 2003).

Here, Plaintiffs fail to assert any factual allegations regarding their failure to discipline claim that are not conclusory. Plaintiffs do not allege any specific employees that Parkland failed to discipline, and it is not apparent from the pleadings whether all six of the "specific incidents of discrimination for promotion to management" were a result of the same employees' actions. Further, Plaintiffs do not plead—other than in conclusory statements—that any disciplinary failure occurred with the deliberate indifference of a policymaker as to the allegedly racially discriminatory promotional practices. The Court grants Defendants' motion to dismiss as to Count ix. Combined, the Court grants Defendants' motion to dismiss as to all of Plaintiffs' § 1983 claims against Parkland.

**B.    § 1983 Claims Against Wood in His Individual Capacity (Counts ii–iv)**

Plaintiffs assert six § 1983 claims against Wood in his individual capacity: (i) count ii—promotion as to Johnson; (ii) count iii—promotion as to Bramble; (iii) count iv—retaliation as to Bramble; (iv) count v—constructive discharge as to Pierce; (v) count vi—constructive discharge as to Bramble; and (vi) count vii—constructive discharge as to Johnson.[8] (ECF No. 7 at 14–19).

Under 42 U.S.C. § 1983, private citizens may sue public officials for violations of their federal statutory or constitutional rights. *See Monroe v. Pape*, 365 U.S. 167, 171 (1961). However, public officials are shielded from civil liability under § 1983 under the doctrine of qualified immunity "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Qualified immunity gives government officials breathing room to make reasonable[,] but mistaken judgments, and protects all but the

---

[8] All constructive discharge claims will be analyzed under Section "C", to include counts 5, 6, and 7.

plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 5 (2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (internal quotation marks omitted)).

The affirmative defense of qualified immunity has two prongs: (i) whether an official's conduct violated a statutory or constitutional right of the plaintiff, and (ii) whether the right was "clearly established" at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001), *overruled in part by Pearson*, 555 U.S. at 223. The two steps of the qualified immunity inquiry may be performed in any order. *Pearson*, 555 U.S. at 236. "A court may rest its analysis on either prong[.]" *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citation omitted). The "clearly establish[ed]" prong of the qualified immunity analysis "'is better understood as two separate inquiries: [(1)] whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, [(2)] whether the conduct of the defendants was objectively unreasonable in light of that then clearly established law.'" *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005) (quoting *Felton v. Polles*, 315 F.3d 470, 477 (5th Cir. 2002)).

To state a claim in an individual capacity suit brought under § 1983, a claimant must allege a violation of the Constitution or federal law by a person acting under color of state law. 42 U.S.C. § 1983. In the context of § 1983 claims against supervisors, "[f]or there to be liability under section 1983, a defendant must have been personally involved in the conduct causing a deprivation of constitutional rights, or there must be a causal connection between the actions of that person and the constitutional right sought to be redressed." *King v. Louisiana*, 294 F. App'x. 77, 83 (5th Cir. 2008) (per curiam) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)) (affirming dismissal of claims against individual defendants, based on qualified immunity, where the allegations against these defendants failed to set forth any constitutional violation); *see also Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999) ("In order to state a cause of action under

§ 1983, [plaintiff] must identify defendants who were either personally involved in the constitutional violation or whose acts are causally connected to the constitutional violation alleged.").

A plaintiff is not required to "fully anticipate the [qualified immunity] defense in his complaint at the risk of dismissal under Rule 12." *Schultea v. Wood*, 47 F.3d 1427, 1430 (5th Cir. 1995). Although "[t]he generic pleading requirements of [Rule 8] govern suits against individual defendants in their official capacity," "[p]laintiffs suing governmental officials in their individual capacities . . . must allege specific conduct giving rise to a constitutional violation." *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) (citing *Anderson*, 184 F.3d at 443). "This standard requires more than conclusory assertions: The plaintiff must allege specific facts giving rise to a constitutional violation." *Oliver*, 276 F.3d at 741 (citing *Baker v. Putnal*, 75 F.3d 190, 194 (5th Cir. 1996); *see also Babinski v. Sosnowsky*, 79 F.4th 515, 519-20 (5th Cir. 2023)("A plaintiff attempting to overcome qualified immunity at the Rule 12(b)(6) stage must plead facts that allow this court to reasonably infer that the defendant is liable for the harm alleged.").

Defendant Wood moves to dismiss Plaintiffs' § 1983 claims against him in his individual capacity asserting that Plaintiffs' pleadings do not overcome his qualified immunity—specifically the first prong as Plaintiffs fail to allege a deprivation of any constitutional right. (ECF No. 11 at 17–18). Wood argues that to avoid dismissal, the complaint must contain facts that Wood was personally involved in the civil rights violation. Wood argues the Complaint fails to allege such facts.

### 1. *Section 1983 Failure to Promote Claims (Counts ii and iii)*

Plaintiffs assert identical failure to promote claims against Wood regarding Plaintiffs Johnson and Bramble. (ECF No. 7 at 14-15). Defendants move to dismiss Johnson and Bramble's

claims of failure to promote against Wood arguing that Plaintiffs fail to sufficiently allege Wood's involvement in such alleged constitutional violation. (ECF No. 11 at 19).

A plaintiff asserting failure to promote because of racial discrimination must show: (i) the employee is a member of the protected class; (ii) he sought and was qualified for the position; (iii) he was rejected for the position; and (iv) the employer continued to seek applicants with the plaintiff's qualifications or hired a person outside of the plaintiff's protected class. *McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015); *see Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 643 (5th Cir. 2014).

(i)     Failure to Promote – Johnson (Count ii)

Here, Johnson alleged that he (i) is Black; (ii) he applied for and was qualified for the CUP Manager position; (iii) he was not promoted to CUP Manager; and (iv) a non-Black individual was hired for the position. (*See* ECF No. 7 at 3–4). Johnson alleges that after applying for the CUP Manager position, he was promised an interview with Defendant Wood and Angela Flores, who was serving as the Central Utility Plant Director because he was an internal candidate. (ECF No. 7 at 3-4). Plaintiff then alleges that he interviewed with Defendant Wood and was informed that he would need a supplemental interview. (ECF No. 7 at 3-4). However, before the supplemental interview could occur, Johnson was informed that another individual had been chosen for the position. (ECF No. 7 at 4). Defendants argue that this claim should be dismissed because, though Wood interviewed Johnson that the decision to hire someone else was made by others at Parkland.

In addressing Defendant's argument, this Court turns to the first prong of the affirmative defense of qualified immunity–whether an official's conduct violated a statutory or constitutional right of the plaintiff. *Saucier*, 533 U.S. at 200-01. In their amended complaint, Plaintiffs allege that Defendant Wood personally conducted the interview with Johnson and that Johnson was

notified that he had not been selected for the position, though the complaint was silent on who notified Johnson. (ECF No. 7 at 4). It is sufficient to survive a 12(b)(6) motion to dismiss when a plaintiff pleads an affirmative causal link between the individual's conduct and the decisionmaker's decision. *Normore v. Dallas. Indep. Sch. Dist.*, No. 3:18-CV-02506-E, 2021 WL 5824864 *1, *6 (N.D. Tex. Dec. 8, 2021). Here, Plaintiffs allege that Defendant Wood personally conducted the interview and that "[d]efendants" hired someone other than Johnson for the position. (ECF No. 7 at 4). However, there is nothing in the pleadings that indicate whether Wood ultimately decided to not hire Johnson. The Plaintiffs do not plead that Wood interviewed other applicants nor that he was involved in the final hiring decision. Accordingly, this Court finds that Plaintiffs have failed to sufficiently plead facts to overcome Defendant Wood's defense of qualified immunity. The Court concludes Wood is entitled to qualified immunity as to this claim. The Court grants Defendant's Motion to Dismiss on Count ii.

Assuming *arguendo* that Johnson had met the first prong. This Court will now analyze the second prong—whether the right was "clearly established" at the time of the violation. *Saucier*, 533 U.S. at 200-01. Under the clearly established prong the right "must be particularized to the facts of the case establishing the right." *Harris v. Clay Cnty., Miss.*, 47 F.4th 271, 277 (5th Cir. 2022). Plaintiffs rely on *Felton* to argue that "… since 2002, this Circuit recognized that failing to promote based on race is an act of disparate treatment and is a clearly established violation of § 1981." 315 F.3d at 487. In *Felton*, the district court denied defendant's claim for qualified immunity on a motion for summary judgment. *Felton*, 315 F.3d at 479. On interlocutory appeal, the Fifth Circuit determined that that the Defendant's were entitled to qualified immunity on the only two claims on the appeal: racial harassment and disparate treatment. *Felton*, 315 F.3d at 483. The Fifth Circuit addresses failure to promote in the context of their disparate treatment analysis but upheld the

district court's ruling that the plaintiff did not demonstrate any involvement by the defendant. *Felton*, 315 F.3d at 487. The promotion at dispute in *Felton* included both an interview and a "State Personnel Board score … [and included] factors such as an applicant's education level or military service". *Felton*, 315 F.3d at 477. These facts contrast with the instant facts of Johnson's complaint because here the interview process included a single in-person interview before notification of another party's hiring. (ECF No. 7 at 4). Therefore, this Court finds that *Felton* does not demonstrate a clearly established right particularized to the facts of our case. No other precedent demonstrates a clearly established right particularized to the facts of this case as to Johnson's failure to promote allegations. Therefore, the Court concludes Wood is entitled to qualified immunity as to this claim. The Court grants Defendant's Motion to Dismiss as to Count ii.

(ii)      Failure to Promote – Bramble (Count iii)

Here, Bramble alleged that he (i) is Black; (ii) he applied for and was qualified for the Director of Environmental Safety position; (iii) he was not promoted to Director of Environmental Safety; and (iv) a non-Black individual was hired for the position. (*See* ECF No. 7 at 8-10). Bramble applied for the Director of Environmental Safety position and was scheduled for a panel interview. (ECF No. 7 at 9). Plaintiff alleges that Defendant Wood chose the panelists for the interview and that Defendant Wood "had the authority to veto the panelists' decisions." (ECF No. 7 at 9). After Bramble's interview with the panel, he was notified that another individual had been selected for the promotion. (ECF No. 7 at 9-10). Defendants move to dismiss this claim because Bramble fails to plead that Wood was personally involved in the denial of promotion. (ECF No. 11 at 19-20). This Court agrees.

The first prong of the affirmative defense of qualified immunity–whether an official's conduct violated a statutory or constitutional right of the plaintiff. *Saucier*, 533 U.S. at 200-01. In

their amended complaint, Plaintiffs allege that Defendant Wood "chose the panelists for interviews" and "had the authority to veto the panelists' decision." (ECF No. 7 at 9). However, to survive a 12(b)(6) motion to dismiss, a plaintiff must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Here, the Plaintiffs do not allege that Defendant Wood participated in the interview of Johnson, nor do they allege that he *did* veto the panel's decision to hire Johnson.

Accordingly, this Court finds that Plaintiffs have failed to sufficiently plead facts to overcome Defendant Wood's defense of qualified immunity. The Court concludes Wood is entitled to qualified immunity as to this claim. The Court grants Defendant's Motion to Dismiss as to Count iii.

### 2. *Section 1983 Retaliation Claim – Bramble (Count iv)*

In Count 4, Bramble asserts a retaliation claim against Defendant Wood under § 1981. (ECF No. 7 at 16). Defendants move to dismiss this claim arguing that Plaintiffs fail to allege Defendant Wood's involvement. (ECF No. 11 at 21). "We examine retaliation claims under Section 1981 using the "same rubric of analysis" as Title VII." *Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209 (5th Cir. 2021), as revised (Nov. 26, 2021) (citing *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021)). A prima facie case of retaliation under § 1981 requires a showing that (i) the employee engaged in a protected activity, (ii) he was subjected to an adverse employment action, and (iii) a causal link exists between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004).

Here, Bramble asserts that (i) he reported "disparate treatment based on his race" to human resources around September 2021; (ii) he received an "unwarranted written warning" in January 2022 and was required to attend weekly meetings; and (iii) he "believed he was experiencing

retaliation for lodging the complaint of discrimination." (ECF No. 7 at 10-11). Bramble alleges in his petition that he was discriminatorily passed over for promotion in the summer of 2021, and was not subsequently notified of two specific open positions. (ECF No. 7 at 10). As a result of these actions, Bramble made a report to Parkland's Human Resources Department in September 2021 and subsequently had two phone calls with a member of the Board of Managers in the Fall of 2021. (ECF No. 7 at 10). As alleged, Bramble received, through Defendant Wood's supervisee, an "unwarranted written warning" on January 20, 2022. (ECF No. 7 at 10). Bramble asserts he promptly notified human resources that he believed he was experiencing retaliation for lodging his complaint of discrimination. (ECF No. 7 at 16). After this report, it is alleged that he was required to attend weekly meetings regarding his performance, meetings he alleges were not warranted nor tied to the subject of the written warning. (ECF No. 7 at 10).

Assuming *arguendo* that Bramble has established the prima facie case for retaliation, Defendants move to dismiss this count on the grounds that "Bramble does not assert any facts showing Wood's involvement in the write-up or any other alleged retaliatory act." (ECF No. 11 at 21). Defendant's argument addresses the affirmative defense of qualified immunity as it pertains to claims by Plaintiffs against Defendant Wood. (ECF No. 11 at 16-18). Under the first prong of a qualified immunity defense, the inquiry is whether "an official's conduct violated a statutory or constitutional right of the plaintiff." *Saucier*, 533 U.S. 194 at 200-01. Inherent in that inquiry is that a defendant must have been personally involved in the conduct causing a deprivation of constitutional rights." *King*, 294 F. App'x. at 83. Here, Plaintiff made the conclusory claim that "Defendant Wood, through his supervisee, issued Bramble an unwarranted disciplinary warning and unwarranted monitoring of his work performance in retaliation for complaining of discrimination." (ECF No. 7 at 16). However, this alone is not satisfactory because a plaintiff must

provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Plaintiff does nothing further to allege Defendant Wood's involvement in the write up or required weekly meetings in their pleadings, instead merely stating that, nearly four months after his initial discrimination report to human resources, he "received an unwarranted written warning". (ECF No. 7 at 11). Plaintiff does not allege that Defendant Wood was the individual who wrote him up or that he was involved in the process in any manner. Nor does Plaintiff allege that Defendant Wood became involved after the written warning, when he was required to attend meetings with, again an unnamed individual. (ECF No. 7 at 11). Plaintiff has alleged no sufficient factual allegations that Wood was personally involved in a deprivation of rights as to this claim. Therefore, the Court concludes Wood is entitled to qualified immunity as to this claim. Consequently, this Court grants Defendant's Motion to Dismiss as to Count iv.

## C.    Constructive Discharge (Counts v-vii, xiv-xvi, and xx-xxii)

Plaintiffs assert identical constructive discharge claims under both Title VII and Texas Labor Code[9] § 21.055 against Parkland. Specifically, Plaintiffs assert the following claims under Title VII: (i) count xiv—as to Bramble; (ii) count xv—as to Pierce; and (iii) count xvi—as to Johnson. Plaintiffs bring the same claims under § 21.055: (i) count xx—as to Pierce; (ii) count xxi—as to Johnson; and (iii) count xxii—as to Bramble. Plaintiffs' assert an additional three constructive discharge claims under § 1983 against Defendant Wood: (i) count v—as to Pierce; (ii) count vi—as to Bramble; (iii) count vii—as to Johnson. Defendants move to dismiss each of the enumerated claims alleging constructive discharge.

---

[9] The Court recognizes that the Commission on Human Rights (TCHRA) has been replaced with the Texas Workforce Commission's civil rights division. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1 (Tex. 2010) (citing Tex. Lab. Code Ann. § 21.0015). Throughout this memorandum opinion and order, the Court refers to Texas Labor Code Chapter 21 as the Texas Labor Code.

The same substantive legal standards and evidentiary framework apply to discrimination and harassment claims under Title VII, Chapter 21, and Section 1983. *See Culwell v. City of Fort Worth*, 468 F.3d 868, 873 (5th Cir. 2006).[10] Thus, the Court considers identical claims under Title VII, Section 1983, and the Texas Labor Code together. "A resignation is actionable under Title VII, allowing the plaintiff to seek compensatory damages for events after the resignation, only if the resignation qualifies as a constructive discharge." *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001). "To prove a constructive discharge, a plaintiff must establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Kinney Shoe Corp.*, 237 F.3d at 566 (citation omitted).[11] Whether that standard is met depends on the facts of each case, but the following factors are relevant:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced/qualified] supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement on terms that would make the employee worse off whether the offer was accepted or not.

*Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). According to Fifth Circuit precedent, "[d]iscrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge" *Kinney Shoe Corp.*, 237 F.3d at 566.

---

[10] *See Reed v. Neopost USA, Inc.*, 701 F.3d 434, 439 (5th Cir. 2012) ("Section 21.051 is effectively identical to Title VII, its federal equivalent, except that Title VII does not protect against age and disability discrimination . . . Because one of the purposes of [the Texas Labor Code] is to provide for the execution of the policies of Title VII . . . we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of the [Texas Labor Code].") (internal quotation marks omitted). *See also, Kinney Shoe Corp.*, 237 F.3d at 566 (applying constructive discharge elements from Title VII to Section 1981 claims).

[11] *See also, Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004) ("The inquiry [for constructive discharge] is objective: Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?").

---

In all six claims of constructive discharge against Parkland under Title VII and § 21.055 of the Texas Labor Code, Plaintiffs allege in conclusory fashion that: "Defendant Parkland's actions in denying Plaintiff [] promotions to management-level positions based upon race, thereby affecting his compensation, made the work conditions so intolerable that Plaintiff [] was compelled to resign." (*See* ECF No. 7 at 25–26, 28–29). A failure to promote—on its own—does not prove constructive discharge. *See Barrow*, 10 F.3d at 297 (not including failure to promote as a factor for meeting the standard for constructive discharge); *Kinney Shoe Corp.*, 237 F.3d at 566.

Alternatively, Plaintiffs allege that Defendant Wood called Plaintiffs Pierce and Bramble, "boy" on "numerous occasions." (ECF No. 7 at 7). Only one instance of this language is specifically pled— as alleged, "Defendant Wood said, 'Hey, boys, how're you doing?' to Plaintiff Pierce and Plaintiff Bramble. Plaintiff Pierce said, 'I'm older than you, so why're you calling me that?'" (ECF No. 7 at 7). In response to the use of "boy" by Wood, Pierce reported the incident to Human Resources; Pierce does not allege that this conduct or language continued after he reported it. (ECF No. 7 at 7). Bramble pled, regarding the same language, only that "Defendant Michael Wood, referred to Plaintiff Bramble and Plaintiff Pierce as 'boys' on numerous occasions." (ECF No. 7 at 8). In light of the above, Plaintiffs fail to plead any factual allegations of how these instances are "so intolerable that a reasonable employee would feel compelled to resign." *Kinney Shoe Corp.*, 237 F.3d at 566. And, Plaintiffs direct the Court to no law as to the same.

As pleaded, Plaintiffs' conclusory statements cannot support a finding of a constructive discharge as to Bramble, Johnson, or Pierce. At this stage, the Court concludes Plaintiffs have failed to allege factual allegations that establish that working conditions were so intolerable that a reasonable employee would feel compelled to resign. *Kinney Shoe Corp.*, 237 F.3d at 566. The Court grants Defendants' corresponding motion to dismiss—all Plaintiffs' claims of constructive

discharge under Title VII and the Texas Labor Code (counts 14, 15, 16, 20, 21, and 22) are dismissed.

In turn, each Plaintiff brought identical constructive discharge claims under § 1983 against Defendant Wood in his individual capacity. (ECF No. 7 at 16-19). Defendants move to dismiss these claims because they are insufficiently pled, and as such Defendant Wood is entitled to qualified immunity. (ECF No. 11 at 21-22).

Plaintiffs each plead, in conclusory fashion: "Defendant Wood's actions in denying promotions to management-level positions based upon race, in violation of his rights under 42 U.S.C. § 1981, made the work conditions so intolerable that Plaintiff… was compelled to resign." (ECF No. 7 at 17-18). As with Plaintiffs' claims of constructive discharge against Parkland, these too fail. The bald conclusion that a failure to promote alone caused an employee to resign is not enough to allege conditions "so intolerable that a reasonable employee would feel compelled to resign." *Kinney Shoe Corp.*, 237 F.3d at 566.

Plaintiffs' have not sufficiently pled constructive discharge, their claims also fail on the first prong of qualified immunity— "whether the plaintiff['s] allegations, if true, establish a violation of a clearly established right." *Wallace v. Cnty. of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). Thus, the Court concludes that all Plaintiffs' claims of constructive discharge under Section 1981—counts 5, 6, and 7—are dismissed.

In summary, the Court grants Defendants' motion as to all of Plaintiffs' constructive discharge claims, thus, such claims are dismissed.

### D.   Employment Discrimination Claim under Title VII (Count x)

Finally, Plaintiffs bring a claim of employment discrimination, count x, on the basis of race under Title VII against Parkland. Defendants move to dismiss this claim alleging that Plaintiffs

fail to state a claim for relief for Title VII discrimination based on a custom or practice. (ECF No. 11 at 24).

To analyze the merits of a plaintiff's Title VII discrimination claim, we use the *McDonnell Douglas* framework, which first requires the plaintiff to establish a prima facie case of discrimination.[12] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). "However, the *McDonnell Douglas* framework is an evidentiary standard, not a rigid pleading requirement." *Puente v. Ridge*, 324 F. App'x 423, 427–28 (5th Cir. 2009); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 506–07 (2002). Thus, for purposes of surviving a Rule 12(b)(6) motion to dismiss, "an employment discrimination plaintiff need not plead a prima facie case of discrimination." *Swierkiewicz*, 534 U.S. at 511; *see also Johnson v. Johnson*, 385 F.3d 503, 531 (5th Cir. 2004). Still, this court may consider the *McDonnell Douglas* framework, and no plaintiff is exempt from her obligation to "allege facts sufficient to state all the elements of her claim." *Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 370 (5th Cir. 2008).

Northern District of Texas Local Civil Rule 7.1(e) instructs that "[a] response and brief to an opposed motion must be filed within 21 days from the date the motion is filed." N.D. Tex. Loc. Civ. R. 7.1(e). A party who fails to pursue a claim beyond its initial pleading may waive or abandon the claim. *Black v. N. Panola School Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff] further failed to defend her retaliatory abandonment claim in both responses to the defendant's motion to dismiss."). Thus, a party's failure to defend a claim in her response to a motion to dismiss

---

[12] A prima facie case requires the plaintiff to show that: "(1) [she] is a member of a protected class; (2) [she] was qualified for her position; (3) [she] was subject to an adverse employment action; and (4) . . . in the case of disparate treatment, . . . that others similarly situated were treated more favorably." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001).

constitutes abandonment. *See Matter of Dallas Roadster*, *Ltd.*, 846 F.3d 112, 126 (5th Cir. 2017) (concluding plaintiff's failure to respond to defendant's argument in a motion to dismiss constituted abandonment) (citing *Black*, 461 F.3d at 588 n.1); *see*, *e.g.*, *Vela v. City of Houston*, 276 F.3d 659, 678-79 (5th Cir. 2001) (discussing abandonment of theories of recovery and defenses when such theories were not presented to the trial court).

Here, Plaintiffs failed to defend their Title VII employment discrimination on the basis of race claim in their response to Defendants' motion to dismiss. (*See* ECF No. 16). Because Plaintiffs failed to address—much less defend—Defendants' challenge to Plaintiffs' Title VII employment discrimination on the basis of race claim, the Court concludes Plaintiffs have abandoned this claim. *See Black*, 461 F.3d at 588 n.1; *Matter of Dallas Roadster, Ltd.*, 846 F.3d at 126; *Vela*, 276 F.3d at 678-79.[13] Thus, the Court dismisses count x with prejudice. In summary, the Court grants Defendants' motion as to all of Plaintiffs' Title VII and Texas Labor Code claims against Parkland, thus, such claims are dismissed.[14]

---

[13] *See also, e.g.*, *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) ("[F]ailure to brief an argument in the district court waives that argument in that court.") (quoting *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 n.10 (S.D. Tex. 2003)) (citations omitted); *Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue.") (citations omitted); *Mayo v. Halliburton Co.*, No. 10-1951, 2010 WL 4366908, at *5 (S.D. Tex. Oct. 26, 2010) (granting motion to dismiss breach of contract claim because plaintiff failed to respond to defendants' motion to dismiss on this issue and thus waived the argument).

[14] An employee must file a charge of discrimination with the EEOC or the Texas Workforce Commission within 300 days (for federal law claims brought under Title VII) or 180 days (for state law claims under the Texas Labor Code). *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). And he or she must file a separate charge for each discrete discriminatory or adverse employment action. *See Morgan*, 536 U.S. at 110. The Court has concerns about whether Plaintiffs sufficiently exhausted their administrative remedies to proceed on Title VII or Texas Labor Code claims. Plaintiffs fail to attach their charges to the EEOC—in fact, Plaintiffs only reference to the exhaustion of administrative remedies is a single paragraph in the complaint stating:

> Plaintiffs have each timely filed a charge of discrimination with the EEOC, which constitutes cross-filing with the Texas Commission on Human Rights. Plaintiffs received their Notices of Right to Sue from the EEOC within 90 days prior to the filing of this First Amended Complaint.

(ECF No. 7 at 2). However, Defendants do not dispute Plaintiffs' exhaustion of administrative remedies.

---

### E.   Leave to Amend

Plaintiffs have requested leave to amend their complaint. (ECF No. 16 at 33). Notwithstanding a plaintiff's failure to plead sufficient facts, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable, or the plaintiffs advise the court that they are willing or unable to amend in a manner that will avoid dismissal." *In re Am. Airlines, Inc.*, *Privacy Litig.*, 370 F. Supp.2d 552, 567–68 (N.D. Tex. 2005) (citing *Great Plains Trust Co. v. Morgan Stanley Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)). Nevertheless, courts may appropriately dismiss an action with prejudice if a court finds that the plaintiff has alleged his or her best case. *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999). "A plaintiff has pleaded her best case after she is apprised of the insufficiency of her complaint." *Wiggins v. Louisiana State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (citing *Brewster v. Dretke*, 587 F.3d 764, 768 (5th Cir. 2009) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam) (internal quotation and citation omitted))). As explained by the Fifth Circuit:

> **A plaintiff may indicate she has not pleaded her best case by stating material facts that she would include in an amended complaint to overcome the deficiencies identified by the court.** *See Brewster*, 587 F.3d at 767–68. **Similarly, a district court need not grant a futile motion to amend.** *Legate*, 822 F.3d at 211 (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 872–73 (5th Cir. 2000)). "Futility is determined under Rule 12(b)(6) standards, meaning an amendment is considered futile if it would fail to state a claim upon which relief could be granted." *Id.*

*Wiggins*, 710 F. App'x at 627 (emphasis added in bold). The Fifth Circuit has affirmed denials of leave to amend where it determined that the proposed amendment would be futile after analyzing the claims. *See Edoinwe v. Bailey*, 860 F.3d 287, 295 (5th Cir. 2017) (where the proposed amended complaint failed to state a claim under 42 U.S.C. § 1983). "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is

sought, *cf.* Fed. R. Civ. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)." *Confederate Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993). If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave. *Scott*, 16F.4th at 1209, (citing *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs "failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and the defendants to the substance of their proposed amendment")).

Here, Plaintiffs did not expressly request, with particularity, the request to amend their complaint. *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Plaintiff's request for leave states:

> In the event this Court determines that Plaintiffs have failed to state a claim [,] Plaintiffs should be granted leave to amend. Under Rule 15(a), leave to amend should be freely given when justice so requires and should be granted absent some substantial justification for refusal. *Forman v. Davis*, 371 U.S. 178, 183 (1962). Allowing Plaintiffs to file an amended complaint would serve justice and promote judicial efficiency. Further, there would be no substantial or undue hardship, prejudice, bad faith, undue delay, or futility by granting Plaintiffs leave to amend.

(ECF No. 16 at 25). This "does not provide any indication of the grounds on which such an amendment should be permitted." *Willard*, 336 F.3d at 387. Northern District of Texas Local Rules 15.1(a) requires a party seeking leave to file an amended pleading to "attach a copy of the proposed amended pleading as an exhibit to the motion[.]" N.D. Tex. Loc. Civ. R. 15.1(a). Plaintiffs attached no amended pleadings to their request for leave. Further, the Court determines Plaintiffs' amendment would be futile. Plaintiffs filed their Amended Complaint in response to Defendant's original Motion to Dismiss. (ECF No. 4 and No. 7). However, in Plaintiffs' request for leave to amend they do not state, "material facts that [they] would include in an amended complaint to

overcome the deficiencies." *Brewster*, 587 F.3d at 767–68. For those reasons, the Court concludes permitting Plaintiffs "any [further] attempts at amendment would be futile." *See Wiggins*, 710 F. App'x at 627 (discussing the same); *Harris v. UnitedHealth Group, Inc. of Texas*, No. 3:23-CV-02486-E; 2024 WL 2734974 (N.D. Tex. May 28, 2024) (denying motion for leave to amend complaint). For those reasons, the Court denies Plaintiffs' Request for Leave to Amend.

## V.   CONCLUSION

For the reasons enumerated above, the Court **GRANTS** Defendants' motion to dismiss. (ECF No. 11). The Motion is granted as to counts i, ii–x, xiv–xvi, and xx–xxii, and thus, these claims are dismissed. Plaintiffs' request for leave to amend their complaint is **DENIED**. (ECF No. 16 at 25). Additionally, Defendants' first motion to dismiss, (ECF No. 4), is **DENIED AS MOOT**.


**SO ORDERED this 3rd day of October, 2024.**


Ada Brown
UNITED STATES DISTRICT JUDGE